UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MURRAY FIRESTONE, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:04-cv-1223-DFH-TAB |
| | ) | |
| v. | ) | |
| | ) | |
| STANDARD MANAGEMENT | ) | |
| CORPORATION and U.S. HEALTH | ) | |
| SERVICES CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

ENTRY ON MOTION FOR JUDGMENT ON PLEADINGS

Plaintiff Murray Firestone worked as president and chief executive officer of U.S. Health Services Corporation for eleven months before his employment was terminated.  Firestone worked pursuant to an offer letter which set forth several material terms of employment but which contemplated a subsequent written contract.  Firestone's complaint alleges that the defendants discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; violated the Indiana Wage Claim Statute, Ind. Code § 22-2-9-1, *et seq.*, by failing to pay him severance and a guaranteed bonus specified in the offer letter; and breached his employment contract by refusing to pay the remaining two years of salary.

Defendants move for judgment on the pleadings with regard to the breach of contract claim and the Wage Claim Statute claim.  The defendants argue that Firestone is not entitled to any further salary, severance, or bonus payments because the offer letter was not an employment contract, so that Firestone was an at-will employee for the eleven months he worked as president and CEO. Defendants also argue that Firestone is not entitled to recover the severance and bonus payments specified in the offer letter because these benefits are not wages as defined by the Wage Claim Statute.   For the reasons explained below, defendants' motion with respect to plaintiff's contract claim is denied.   With respect to plaintiff's claim under the Wage Claim Statute, the plaintiff is ordered to show cause why the claim should not be dismissed for failure to comply with a preliminary requirement before suit.

*Judgment Standard*

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same standard applicable to a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Guise v. BMW Mortgage, LLC*, 377 F.3d 795, 798 (7th Cir. 2004).  By moving for a judgment on the pleadings, the defendants have invited the court to consider the case under a legal standard that is one of the most generous to plaintiffs under the law.   The court must treat as true all well-pleaded facts set forth in the complaint, construe the allegations liberally, and view all inferences reasonably

drawn from the alleged facts in the light most favorable to the plaintiff.  *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000); *Gould v. Artisoft, Inc.*, 1 F.3d 544, 548 (7th Cir. 1993).  The court is not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claims or to assign any weight to unsupported conclusions of law.  *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).  Dismissal is warranted only if it is clear that the plaintiff can prove no set of facts consistent with the complaint that would entitle him to relief.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998), quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

The court's consideration of defendants' motion is limited to the pleadings, which consist generally of the complaint and any exhibits or documents attached to or referenced in the complaint, as well as the parties' briefs on the motion.  See *Thompson v. Illinois Department of Professional Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002); *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).  Plaintiff may even posit facts in his brief.  So long as those facts are not inconsistent with the complaint, the court must assume they are true for purposes of deciding the motion.  See, *e.g.*, *Chavez v. Illinois State Police*, 251 F.3d 612, 650 (7th Cir. 2001); *Trevino v. Union Pacific Railroad Co.*, 916 F.2d 1230, 1239 (7th Cir. 1990).

*Factual Allegations*

For the purpose of deciding defendants' motion, the court accepts the following allegations contained in plaintiff's pleadings as true.  On January 23, 2003, defendant Standard Management sent Firestone a letter offering him a position as president and CEO of U.S. Health Services, a subsidiary of Standard Management.  The letter in its entirety stated:

Dear Murray,

We are excited about you joining U.S. Health Services Corporation ("USHS"), a wholly-owned subsidiary of Standard Management Corporation ("SMC").  In follow up to our recent discussions, we are pleased to offer you the following position and compensation package:

Your position will be Chief Executive Officer for USHS.  Your base salary will be $275,000 per year.  You will receive a three (3) year employment contract which will include a one (1) year severance payment equal to your base salary.  You will receive a USHS paid membership to the Five Seasons Health Club.

You are entitled to the standard benefit package that is offered by SMC.  Please take note that the health benefits provided by SMC do not take effect until you have been an employee for 30 days.  The standard benefit package is outlined in the Employee Handbook.

You will be entitled to an annual bonus equal to 1½% of earnings before interest and taxes ("EBIT") of USHS.  For the year ending December 31, 2003, you will be guaranteed a minimum bonus of $100,000.

You will receive a grant of 25,000 incentive stock options of SMC upon the effective date of your employment, at the closing market price on said date, to be immediately vested.  Upon the closing of the first acquisition which you have introduced to USHS, you will be entitled to an additional grant of 25,000 incentive stock options of SMC, at the closing market price on said date, to be immediately vested.

With respect to merger and acquisition candidates you have previously introduced to USHS, you will be entitled to a 3% finders fee based upon the actual consideration paid by USHS for such acquisition candidate. You will be entitled to an additional 3% finders fee on such acquisition candidate if the target EBIT is achieved by such acquisition at the close of its first fiscal year. A list of merger and acquisition candidates introduced by you to USHS is attached hereto as Exhibit A. The target EBIT of a completed acquisition shall be confirmed and agreed in writing by both USHS and yourself before it shall be effective.

Your starting date of employment shall be January 27, 2003. Our general counsel will commence drafting an employment contract for submission to you for your review next week. All executive employment contracts are subject to the prior review and approval of the Compensation Committee of SMC before they become effective.

We look forward to you becoming a member of the Standard Management Corporation family.

Sincerely,
Ronald D. Hunter
Chairman and Chief Executive Officer

Complaint, Ex. 1.

Firestone accepted Standard Management's offer of employment on January 27, 2003. Firestone worked until December 1, 2003, at which time Ronald Hunter, chairman and CEO of Standard Management, told Firestone that his position had been eliminated and that his employment was terminated. Defendants have not paid Firestone the two additional years of salary, the severance payment equal to one year's salary, or the guaranteed minimum bonus of $100,000 for 2003.

*Discussion*

Plaintiff Firestone claims that defendants breached a three-year employment contract and he is due the salary for the time remaining on the contract, plus severance pay equal to his annual base salary and a guaranteed first-year bonus of $100,000.  Defendants contend they do not owe Firestone any further salary because no employment contract existed between them and thus  Firestone's employment was at will.  Defendants also contend that, because no employment contract existed, the severance and bonus provisions of the offer letter are not binding, and that the severance and bonus payments are not wages under Indiana's Wage Claim Statute.

An employment agreement existed between Firestone and the defendants. Firestone worked for defendants for almost year and received a salary.  The precise terms of their agreement cannot be decided as a matter of law on the basis of the meager evidence presently available to the court.  Whether the defendants owe Firestone any remaining salary depends on whether the employment agreement was for at-will employment or for a definite or ascertainable term of employment.  This question cannot be answered at this stage of the litigation. Similarly, whether the defendants are bound by the severance and bonus provisions set forth in the offer letter depends on whether the offer letter, in the absence of evidence of any other agreement, can be considered a binding contract. This question also cannot be decided based on the pleadings.  Finally, it is not

clear that plaintiff's claim under the Wage Claim Statute can be addressed in this court at this time.

I.    *Breach of Contract*

Indiana recognizes two basic forms of employment:  (1) employment for a definite or ascertainable term; and (2) employment at will.  *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 717 (Ind. 1997).  If an employment contract is for a definite term, neither the employer nor the employee generally may terminate the employment relationship before the end of the specified term except for cause or by mutual agreement.  *Id.*  If there is no definite or ascertainable term of employment, the employment is at will and presumptively terminable at any time by either party with or without cause.   Either form of employment relationship, however, is still contractual.  *Remmers v. Remington Hotel Corp.*, 56 F. Supp. 2d 1046, 1052 (S.D. Ind. 1999); see also *Orr*, 689 N.E.2d at 717 (explaining that the employment-at-will doctrine is a rule of contract construction and not a rule imposing substantive limits on the parties' freedom to contract); *Pepsi-Cola General Bottlers, Inc. v. Woods*, 440 N.E.2d 696, 697 (Ind. App. 1982) (finding a contract of employment between the parties that was oral and of indefinite duration, and thus at will).

An employment agreement/contract existed between Firestone and the defendants.  Defendants offered Firestone employment as president and CEO of

U.S. Health Services for a period of three years. Firestone alleges that he worked in that capacity until December 1, 2003 and was paid by defendants for his work. See *Whinery v. Roberson*, 819 N.E.2d 465, 472-73 (Ind. App. 2004) (finding contractual elements were established by State's offer to pay consideration for employees' services and the employees' acceptance through performance). The material issue with regard to whether defendants owe Firestone any remaining salary is whether the employment agreement was for employment at will or for a definite or ascertainable term. If the agreement was for at-will employment, then defendants do not owe Firestone salary for any time beyond his discharge date, at least under a breach of contract theory.

To determine as a matter of law that the employment agreement between the parties was for at-will employment, the court would have to find that the offer letter, which proposed a three-year term of employment, was not a binding contract. If it was not, the employment agreement between Firestone and defendants would be essentially an agreement for at-will employment with terms left unspecified, and defendants would not be required to pay the remaining two years of salary. The offer letter would not be a binding contract (a) if the letter was too incomplete and indefinite to be enforceable or (b) if the parties did not intend to be bound by the letter's terms. See *Mays v. Trump Indiana, Inc.*, 255 F.3d 351, 358 (7th Cir. 2001), citing *Wolvos v. Meyer*, 668 N.E.2d 671, 675 (Ind. 1996) (whether an agreement is an enforceable contract or merely an agreement to agree

involves two interrelated areas:  the definiteness of the terms and the parties' intent to be bound).

It is a fundamental tenet of contract law that "a contract is unenforceable if it is so indefinite and vague that the material provisions cannot be ascertained." *Ewing v. Board of Trustees of Pulaski Memorial Hospital*, 486 N.E.2d 1094, 1098 (Ind. App. 1985), quoting *Pepsi-Cola General Bottlers, Inc. v. Woods*, 440 N.E.2d 696, 699 (Ind. App. 1982).   For an employment contract to be valid and enforceable, four elements are needed:  (1) the place of employment; (2) the period of employment; (3) the nature of the services the employee is to render; (4) the compensation the employee is to receive.   *Majd Pour v. Basic American Medical, Inc.*, 512 N.E.2d 435, 439 (Ind. App. 1987), citing *McMurray v. Bateman*, 144 S.E.2d 345, 354 (Ga. 1965); see also *Jones v. General Electric Co.*, 87 F.3d 209, 213 (7th Cir. 1996); *Butts v. OCE-USA, Inc.*, 9 F. Supp. 2d 1007, 1011 (S.D. Ind. 1998), citing *Majd Pour*; *Ritter v. Stanton*, 745 N.E.2d 828, 840 (Ind. App. 2001), citing *Majd Pour* and *Jones*.  The agreement must be reasonably certain in the promises and performances to be rendered by each party and must provide a basis for determining the existence of a breach and for giving an appropriate remedy.   *McLinden v. Coco*, 765 N.E.2d 606, 613 (Ind. App. 2002); *Ewing*, 486 N.E.2d at 1098.

Defendants contend the offer letter in this case is not sufficiently specific as to Firestone's duties, which are identified by the title chief executive officer.

Defendants cite no case law to support their argument that such detail is necessary to satisfy the third element in the *Majd Pour* standard. *Ewing*, upon which defendants rely, does not provide the necessary support. In *Ewing*, the appellate court held that an offer of a salary quoted in terms of annual salary was not specific enough to support an inference that the parties intended to contract for employment for a definite term. The duration term is not at issue in this case.

*Majd Pour* is more instructive on the issue here. In that case, an offer letter that the plaintiff claimed was an employment contract referred to the fact that the plaintiff would be "practicing medicine" in Georgiana, Alabama. 512 N.E.2d at 436-37. The Court of Appeals found that this reference to "practicing medicine" could be construed to state sufficiently the nature of plaintiff's prospective employment, and reversed the trial court's dismissal for failure to state a claim. *Id.* at 439. Defendants argue that the reference to Firestone's position as CEO in the offer letter is different, because the letter does not detail what exactly the job of CEO would entail. The reference to "practicing medicine" in *Majd Pour* is no more revealing on its face than the title "chief executive officer." The offer letter in *Majd Pour* did not state whether the plaintiff physician was, for example, a general practitioner, surgeon, or neurologist. In this case, the offer letter's reference to Firestone's position as CEO of U.S. Health Services may be construed to provide reasonable certainty of the promises made and the nature of Firestone's employment. This reference, combined with the other terms in the letter, is

sufficiently certain to provide a basis for determining breach and the existence of a remedy.

Whether the parties intended to be bound by the offer letter and its terms is less clear. "A meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract." *Wallem v. CLS Industries, Inc.*, 725 N.E.2d 880, 883 (Ind. App. 2000). In its interpretation of the offer letter, the court should attempt to determine the parties' intent from their expressions within the four corners of the instrument. *Ten Cate Enbi, Inc. v. Metz*, 802 N.E.2d 977, 981 (Ind. App. 2004).

The offer letter indicates that the defendants intended to draft a subsequent contract:

> Your starting date of employment shall be January 27, 2003. Our general counsel will commence drafting an employment contract for submission to you for your review next week. All executive employment contracts are subject to the prior review and approval of the Compensation Committee of SMC before they become effective.

Complaint, Ex. 1. Defendants argue that this language indicates that they did not intend the offer letter to be a binding employment contract.

The parties' intent to execute a subsequent written document can indicate their intent at the time the offer letter was drafted. *McLinden*, 765 N.E.2d at 612. An expressed intent by at least one party that there shall be no legal obligation

until a subsequent formal writing is produced is generally effective to prevent a contract from arising before the condition precedent is completed.  *Wolvos v. Meyer*, 668 N.E.2d 671, 675 (Ind. 1996); accord, *Foster v. United Home Improvement Co., Inc.*, 428 N.E.2d 1351, 1355 (Ind. App. 1981); *International Shoe Co. v. Lacy*, 53 N.E.2d 636, 638 (Ind. App. 1944); *Avery v. Citizens' Loan & Trust Co.*, 180 N.E. 23, 24 (Ind. App. 1932).  However, if the subsequent instrument would have only memorialized the prior agreement, or if the parties only generally agreed or anticipated that a written contract would be signed before work would begin, the subsequent instrument may not be needed.  *Foster*, 428 N.E.2d at 1355-56; *International Shoe*, 53 N.E.2d at 638.

The pleadings do not show that defendants are entitled to judgment on the contract claim.  The letter itself is sufficiently specific, and its reference to a later written agreement could be deemed merely an agreement to consider possible modification or refinement in the future.  The pleadings do not show whether the subsequent written contract to which the offer letter referred was ever drafted.  If defendants never followed through on this stated intention, they might be deemed to have waived any such argument, or perhaps estopped from relying on the absence of a second document.  Evidence on this issue may be relevant to defendants' contention that they did not intend to be bound until a subsequent instrument was drafted.  Also, the pleadings do not show whether such an instrument, if drafted, was reviewed and approved by the Compensation Committee of Standard Management.  Nor is there evidence regarding whether the

Compensation Committee reviewed and approved the offer letter.  It is not plaintiff's burden at this stage of the litigation to negate a potential defense or to allege that these acts were or were not completed.  See Def. Br. 14 at 5.  Further, the pleadings do not show whether any essential terms of the employment contract had not already been negotiated and set forth in the offer letter.  See *Goethals v. DeVos*, 366 N.E.2d 673, 675 (Ind. App. 1977) (no contract where terms were left open for further negotiation).  The offer letter's reference to drafting and approving a subsequent instrument may well indicate more than a mere memorialization of the parties' agreement, but the pleadings alone do not demand a finding that Firestone was an at-will employee.

Whether the offer letter constitutes a binding contract also is relevant to whether defendants might be bound by the severance and bonus provisions in the letter.  Assuming that the provisions appeared only in the offer letter, defendants would not be bound by the provisions unless the offer letter reflected the terms of a binding contract.  Because the pleadings do not show decisively that the letter could not possibly be binding, the defendants are not entitled to judgment on the binding effect of the severance and bonus provisions.

II.    *Wage Claim Statute*

Count III of Firestone's complaint alleges that the defendants violated Indiana's Wage Claim Statute, Ind. Code § 22-2-9-1 *et seq.*, when they failed to

make timely severance and bonus payments as provided in the offer letter.
Indiana Code § 22-2-9-2 requires an employer to pay a discharged employee any
unpaid wages or compensation to which the employee is entitled.  See *Pyle v.
National Wine & Spirits Corp.*, 637 N.E.2d 1298, 1299 (Ind. App. 1994).  The
related Wage Payment Statute requires an employer to pay each employee at least
semimonthly or biweekly, if requested, the amount due the employee.  Ind. Code
§ 22-2-5-1(a).  The Wage Payment Statute also requires payment be made for all
wages earned to a date not more than ten days prior to the date of payment.  Ind.
Code § 22-2-5-1(b).

Under the Wage Claim Statute and in many cases under the Wage Payment
Statute, wages are defined as "all amounts at which the labor or service rendered
is recompensed, whether the amount is fixed or ascertained on a time, task, piece,
or commission basis, or in any other method of calculating such amount."  Ind.
Code § 22-2-9-1(b); see *Manzon v. Stant Corp.*, 138 F. Supp. 2d 1110, 1113, n.3
(S.D. Ind. 2001) (discussing application of definition in § 22-2-9-1 to Wage
Payment Statute); but see *Jeurissen v. Amisub, Inc.*, 554 N.E.2d 12, 13 (Ind. App.
1990) (applying alternative definition of wages used in *Wilson v. Montgomery Ward
& Co., Inc.*, 610 F. Supp. 1035, 1038 (N.D. Ind. 1985):  "something akin to the
wages paid on a regular, periodic basis for regular work done by the employee –
the paycheck which compensates for the work done in the previous two weeks").

Defendants argue that, contract issues aside, the severance and bonus payments specified in the offer letter are not "wages" as defined in § 22-2-9-1(b). Before the court addresses defendants' argument, however, there is a preliminary issue that should be addressed.    The plaintiff was required to pursue administrative remedies with the Indiana Department of Labor.    There is no specific indication in the complaint that he did so.    Because Firestone's employment was terminated by his employer, the defendants, he may not proceed under the related Wage Payment Statute, which does not require that administrative remedies be pursued.

The Indiana Court of Appeals succinctly explained the proper application of each statute in *E & L Rental Equipment, Inc. v. Bresland*:

> E & L first contends that the trial court lacked subject matter jurisdiction over Bresland's claim because Bresland failed to exhaust his administrative remedies.  It maintains that Bresland's claim falls within the ambit of the Wage Claims statute and accordingly his claim must be submitted to the Indiana Department of Labor rather than the trial court.
>
> Claimants who proceed under the Wage Claims statute may not file a complaint with the trial court.  *St. Vincent Hospital & Health Care Center, Inc. v. Steele*, 766 N.E.2d 699, 705 ([Ind.] 2002).  Rather, the wage claim is submitted to the Indiana Department of Labor.  *Id.* The Wage Claims statute references employees who have been separated from work by their employer and employees whose work has been suspended as a result of an industrial dispute.  *Id.*  By contrast, the Wage Payment statute applies to current employees and those who have voluntarily left employment, either permanently or temporarily. *Id.*  The Wage Payment statute does not require a claimant to submit his or her claim to the Indiana Department of Labor before filing suit.

782 N.E.2d 1068, 1070 (Ind. App. 2003).

Under these circumstances, the court believes the most prudent step is to order Firestone to show cause no later than July 18, 2005 why the court should not enter a judgment on the pleadings with respect to Count III on the basis that claims pursuant to Indiana's Wage Claim Statute must be brought to the Indiana Department of Labor rather than to the district court.  Defendants may file a response 14 days after plaintiff responds to the order to show cause.  Both sides may submit affidavits or other evidence they consider relevant to the issue, and may direct the court's attention to evidence already in the record.

*Conclusion*

For the foregoing reasons, defendants' motion for judgment on the pleadings with respect to plaintiff's contract claim is denied.  Firestone is hereby ordered to show cause no later than July 18, 2005 why his claim for violations of Indiana's Wage Claim Statute should not be dismissed for the reasons set forth above. Defendants may file a response no later than 14 days after plaintiff files his response.

So ordered.

Date: July 5, 2005

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Peyton Louis Berg
BOSE MCKINNEY & EVANS, LLP
pberg@boselaw.com

Matthew S. Effland
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
matthew.effland@odnss.com

Daniel C. Emerson
BOSE MCKINNEY & EVANS, LLP
demerson@boselaw.com

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP
amcneil@boselaw.com

Kenneth B. Siepman
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
kenneth.siepman@odnss.com